IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TIMOTHY J. DELAURO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  3:08-CV-232-JTM-CAN |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| INC., INDIANA DEPARTMENT OF | ) | |
| CORRECTIONS, OLIVER W. | ) | |
| CRAWFORD, M.D., BILL WILSON, | ) | |
| MARY TREADWELL AND RON NEAL, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' DR. OLIVER CRAWFORD AND CORRECTIONAL MEDICAL
SERVICES, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**

Defendants, Dr. Oliver Crawford and Correctional Medical Services, Inc., by counsel, for

their Memorandum in Support of Their Motion for Summary Judgment, state the following:

## I.      ISSUE PRESENTED

Whether Dr. Crawford and Correctional Medical Services, Inc. were negligent and

deliberately indifferent to Plaintiff's serious medical needs, even though they constantly

monitored Plaintiff's condition and sent him out to the hospital twice, and when four

independent expert doctors have found that Dr. Crawford met the standard of care in his

treatment of Plaintiff.

## II.      INTRODUCTION AND PROCEDUREAL HISTORY

At all times relevant to Plaintiff's Complaint, Mr. DeLauro was incarcerated at the

Westville Correctional Facility.  Mr. DeLauro originally filed this action in state court, but the

case was removed to this Court.  In his Complaint, Mr. DeLauro alleges that Defendants were

negligent and deliberately indifferent to his serious medical needs because they failed to diagnose and treat appendicitis in a timely manner, in violation of 42 U.S.C. Section 1983 and the 8th Amendment to the U.S. Constitution.  *See Plaintiff's Complaint, paragraph 3, attached to Defendants' Designation of Pleadings and Evidence as* **Exhibit A.**  Dr. Oliver Crawford was an independent contractor physician at the Westville Correctional Facility, working through a contract with Correctional Medical Services, Inc., which is the company that contracts with the Indiana Department of Correction to provide medical care to Indiana prisoners.  *Affidavit of Dr. Oliver Crawford, paragraph 4, attached to the Designation of Pleadings and Evidence as* **Exhibit B.**  The state-law negligence claim against Defendant Dr. Oliver Crawford has already been presented to a Medical Review Panel pursuant to the provisions of the Indiana Medical Malpractice Act and the Medical Review Panel's Opinion was that Dr. Crawford met the standard of care in his treatment of Mr. DeLauro.

### III.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

On April 11, 2006, while incarcerated at the Westville Correctional Facility, Mr. DeLauro submitted a request for health care regarding bad stomach pains, vomiting, and a headache.  *See authenticated medical records of Timothy DeLauro from the Westville Correctional Facility, pp. 2-3 and 69, attached to the Designation of Pleadings and Evidence as* **Exhibit C**.  Nurse S. Budham examined Mr. DeLauro in the Urgent Care Clinic in response to his request.  *Id*.  Mr. DeLauro reported vomiting four times, urinating during the night, feeling weak, but denied diarrhea and abdominal pain.  *Id*.  Mr. DeLauro's vital signs were as follows: temperature 99.5 degrees, respiration 18, blood pressure 104/72, and pulse 122.  *Id*.  Nurse Budham referred Mr. Delauro to Nurse Practitioner Barbara Brubaker, who ordered one dose of Phenergan, Tylenol, and to return in two days.  *Id*.

**<u>Thursday, April 13, 2006, two days later:</u>**

On April 13, 2006, two days later, Mr. Delauro returned to the Urgent Care Clinic as instructed, where Nurse Budham examined him again.   *Exhibit C, pp. 69-70*. Mr. DeLauro reported that he still felt bad, was nauseous, had vomited three times since his last visit, had diarrhea, felt weak, urinated every half an hour in small amounts, and his testicles hurt.  *Id*.  Mr. DeLauro's vitals signs were as follows:   blood pressure 100/66, temperature 98.6 degrees, respiration 20, and pulse 140.  *Id*.  Nurse Budham obtained a urine dipstick, in which there was a small amount of blood and the urine was concentrated.  *Id*.  Nurse P. Sosinzky admitted Mr. DeLauro to the infirmary and called Dr. Oliver Crawford.  *Id*.

Dr. Oliver Crawford examined Mr. DeLauro on April 13, 2006 after Mr. DeLauro was admitted to the infirmary.  *Aff. of Dr. Crawford, paragraph 5*.  Prior to this time, Dr. Crawford was not aware of Mr. DeLauro's condition, because Mr. DeLauro had been treated by the nurse practitioner.  *Id*.  Dr. Crawford examined Mr. DeLauro and ordered an x-ray of the abdomen, which showed marked small bowel distension with multiple air-fluid levels, suggestive of a small distal bowel obstruction.  *Aff. of Dr. Crawford, paragraph 5; Exhibit C, pp. 4-7 and 71*. Dr. Crawford decided that Mr. DeLauro should be sent to St. Anthony Hospital for a CT scan to rule out appendicitis.  *Id*.  To accomplish this, Dr. Crawford submitted a consultation request to Correctional Medical Services for an emergency room visit and a CT scan of Mr. DeLauro's pelvis.  *Id*.  In his request, Dr. Crawford noted that Mr. DeLauro had a four-day history of nausea and vomiting, low grade temperature, and right lower quadrant pain.  *Id*.

Mr. DeLauro was then taken to St. Anthony Hospital, where a CT scan showed mucosal edema of the small bowel, but no evidence of appendicitis.  *See the authenticated medical records of Timothy DeLauro from St. Anthony Hospital, pp. 1-4, attached to the*

*Designation of Pleadings and Evidence as* **Exhibit D***; Aff. of Dr. Crawford, paragraph 6.* The St. Anthony radiologist sent a written report back to the prison stating that the appendix was normal with no evidence of appendicitis. *Id.*

### Friday, April 14, 2006:

On April 14, 2006, an emergency signal was called to Mr. DeLauro's cell. *Exhibit C, pp. 8-10 and 71-73.* When the nursing staff arrived, Mr. DeLauro was on the floor complaining of abdominal pain. *Id.* He was vomiting, had a tender abdomen, and sluggish bowel sounds. *Id.* His temperature was 98.6 degrees, pulse 133, and blood pressure 102/80. *Id.* Nurse P. Sosinzky admitted Mr. DeLauro to the infirmary. *Id.* Nurse Practitioner Brubaker ordered IV fluids, labs, vital signs four times daily, Phenergan, and a clear liquid diet for 24 hours. *Id.* Later that day in the infirmary, Mr. DeLauro complained of abdominal pain and he appeared very pale and unstable on his feet; his vital signs were within normal limits. *Id.* Mr. DeLauro also vomited a small amount of dark green bile. *Id.* Medical staff completed a urinalysis. *Id.* The nurses continued to monitor Mr. DeLauro throughout the day. *Id.*

### Saturday, April 15, 2006:

On April 15, 2006, nurses charted their close observations of Mr. DeLauro at eight different times throughout the day. *Exhibit C, pp. 11 and 73-75.* At 5:00 a.m., Mr. DeLauro reported feeling sick to his stomach, had been vomiting dark green chunky emesis, and needed help voiding. *Id.* Nurse Practitioner Brubaker prescribed Phenergan for his symptoms. *Id.* Mr. DeLauro continued to vomit small amounts in the morning and requested that his IV be removed. *Id.* The nurse removed the IV, but later replaced it. *Id.* By 8:30 a.m., Mr. DeLauro had a temperature of 99.4, respiration 20, and bowel sounds were regular and present in all four quadrants. *Id.* Mr. DeLauro continued to complain of nausea, but not emesis, throughout the

morning. *Id*. At 1:30 p.m., Nurse Chasteen noted that Mr. DeLauro had stopped vomiting, but had diarrhea. *Id*. His blood pressure was 118/82, respiration 20, temperature 98.7, and pulse 124. *Id*. Mr. DeLauro was out of bed several times drinking water. *Id*. Throughout the afternoon, he denied nausea and vomiting, but complained of abdominal pain. *Id*. At 4:30 p.m., Mr. DeLauro complained of nausea, but stated that it was decreasing. *Id*. By 9:00 p.m., Mr. DeLauro felt a little better, was not vomiting, and denied nausea. *Id.* Because this was a weekend, Dr. Crawford was not physically at the prison, but he was available if the nursing staff needed him. *Aff. of Dr. Crawford, paragraph 7.*

### Sunday, April 16, 2006:

On the morning of April 16, 2006, Nurse Boyd noted that Mr. DeLauro slept in short intervals, his IV was doing well, he was voiding frequent yellow urine, and he had loose stool. *Exhibit C, pp. 12 and 75-76.* Later that day, Mr. DeLauro stated that he did not feel well, although he was up moving and had a shower. *Id*. Following his shower, Mr. DeLauro denied nausea and had a normal bowel movement. *Id*. That evening, Mr. DeLauro reported abdominal discomfort, a burning pain in his lower abdomen, sore testicles, but denied nausea. *Id*. Nurse Mims noted that his testicles were swollen and bowel sounds were sluggish. *Id*. She notified Nurse Practitioner Brubaker, who ordered Tylenol. *Id*. At 8:00 p.m., Mr. DeLauro's temperature was 100.5 degrees. *Id*. Because this was a weekend, Dr. Crawford was not physically at the prison, but he was available if the nursing staff needed him. *Aff. of Dr. Crawford, paragraph 7.*

### Monday, April 17, 2006:

On April 17, 2006, Mr. DeLauro stated that his stomach hurt and he felt like he had to go to the bathroom all the time. *Exhibit C, pp. 13-21 and 77.* He had been up to use the bathroom

several times during the night and his bowel movement was a small amount of light brown fluid. *Id*. He complained of lower abdominal pain and his abdomen was tender to the touch. *Id*. Mr. DeLauro had blood drawn and a metabolic panel run. *Id; Exhibit D, pp. 10-12*. Later that day, Mr. DeLauro was out of bed several times, voided with no complaints of discomfort, ambulated with a steady gait, and IV fluids were discontinued. *Id*.

### Tuesday, April 18, 2006:

On the morning of April 18, 2006, Mr. DeLauro stated that his stomach still hurt and he had diarrhea. *Exhibit C, pp. 77-78*. His blood pressure was 118/68, temperature 100.2, pulse 84, and respiration 18. *Id*. He had been up frequently during the night to use the bathroom; however, diarrhea was not observed by the staff. *Id*. A nurse gave Mr. DeLauro Tylenol for his temperature. *Id.* Dr. Crawford examined Mr. DeLauro at approximately 8:00 a.m. *Exhibit C, pp. 22-25 and 78-81; Aff. of Dr. Crawford, paragraphs 8-9.* Mr. DeLauro had nausea, vomiting, fever, and abdominal pain for 24 hours. *Id*. Dr. Crawford ordered an IV, Phenergan for seven days, Zantac for seven days, and antibiotics. *Id*. Dr. Crawford also wanted to again rule out appendicitis and gastritis and therefore decided to send Mr. DeLauro back to the hospital. *Id*. To accomplish this, Dr. Crawford submitted a written request to Correctional Medical Services to send Mr. DeLauro to Wishard Hospital. *Id*. In this request, Dr. Crawford noted that Mr. DeLauro had episodes of fever, abdominal pain, and diarrhea, and a recent CT scan showed no appendicitis and lab results showed a change in the white blood cell count. *Id*. Later that morning, Mr. DeLauro stated that his stomach hurt and he had frequent diarrhea. *Id*. Dr. Crawford examined Mr. DeLauro's stomach and ordered an IV and to continue fluids. *Id*. Later that afternoon, Dr. Crawford sent Mr. DeLauro to Wishard Hospital. *Id.*

### Mr. DeLauro's admission to Wishard Hospital:

From April 19, 2006 to May 3, 2006, Mr. DeLauro was admitted to Wishard Hospital. *Aff. of Dr. Crawford, paragraph 10; Exhibit C, pp. 26-44; Authenticated medical records of Timothy DeLauro from Wishard Hospital, pp. 1-44, attached to the Designation of Pleadings and Evidence as **Exhibit E***.  While at Wishard, he underwent surgery for a ruptured appendix with generalized peritonitis and adhesive small bowel obstruction. *Id*.  His appendix was removed and the peritoneal abscess was drained. *Id*.  On May 3, 2006, Wishard Hospital discharged Mr. DeLauro back to the prison with instructions for Tylenol, Colace, and to return to the emergency room if he experienced a fever greater than 101.5, nausea, vomiting, abdominal distension, abdominal pain, or drainage from the wound. *Id*.  The Wishard physicians instructed the prison staff to change the wet-to-dry dressing at the incision site twice a day and for Mr. DeLauro to refrain from lifting anything over ten pounds for the next six weeks. *Id.*

### Mr. DeLauro's post-operative course at the prison:

Once Mr. DeLauro arrived back at the prison, Nurse Practitioner Brubaker ordered all of the discharge medications and a general surgery consultation in three to four weeks. *Aff. of Dr. Crawford, paragraphs 11-13.*  Mr. DeLauro stated that his stomach felt okay. *Exhibit C, pp. 45 and 81.*  His temperature was 98.3 degrees and blood pressure 112/68. *Id.*  Mr. DeLauro's wound was monitored closely throughout the month of May by Dr. Crawford and the nursing staff. *Aff. of Dr. Crawford, paragraphs 11-13; Exhibit E, pp. 46-68 and 81-118.*  He remained in the prison infirmary from May 3, 2006 until May 23, 2006. *Id*.  His wounds were cleaned and dressed at least three times a day and the skin around the surgical site was monitored closely. *Id*.  Mr. DeLauro's wound became infected in the first week of May 2006, but the infection cleared up with medication and skin debridement. *Id*.  Mr. DeLauro also remained on pain medication

and antibiotics while in the infirmary.  *Id.*  On May 23, 2006, a CT scan done at St. Anthony's

Hospital showed no evidence of intra-abdominal abscess, so Dr. Crawford released Mr. DeLauro

from the infirmary with instructions for continued wound care.  *Aff. of Dr., Crawford, paragraph*

*13; Exhibit D, pp. 5-9.*

Mr. DeLauro was released from prison on June 9, 2006.  *Aff. of Dr. Crawford,*

*paragraph 14.*  The medical care rendered to Mr. DeLauro by the nursing staff at the prison was

reasonable, appropriate, and within the standard of care.  *Id., paragraph 15*.  Plaintiff's

negligence claim against Dr. Crawford has already been reviewed by a Medical Review Panel

pursuant to the provisions of Indiana's Medical Malpractice Act and the three doctors on that

Panel concluded that Dr. Crawford did not breach the standard of care in his treatment of Mr.

DeLauro.  *See Opinion of the Medical Review Panel, attached to the Designation of Pleadings*

*and Evidence as* **Exhibit G**.  An independent emergency room physician, Dr. Barbara

Zimmerman, has also reviewed this case and determined that Dr. Crawford's treatment of Mr.

DeLauro was within the standard of care and that it was reasonable for Dr. Crawford to rely on

the negative CT scan results from St. Anthony Hospital on April 13, 2006.  *See Affidavit of Dr.*

*Barbara Zimmerman, paragraphs 1-10, attached to the Designation of Pleadings and Evidence*

*as Exhibit F.*

## IV.   STANDARD OF REVIEW

The party seeking summary judgment must demonstrate that no genuine issue of material

fact exists and that the movant is entitled to judgment as a matter of law.  *Rule 56(c), Federal*

*Rules of Civil Procedure*; *Certain Underwriters of Lloyd's v. General Accident Insurance*

*Company of America*, 909 F.2d 228 (7th Cir. 1990).  Once the movant makes such a showing, the

opponent must produce evidence to show that material facts are actually in dispute.  *Lujan v.*

*National Wildlife Federation*, 110 S. Ct. 31777 (1990); *Celotex  Corporation v. Catrett*, 477 U.S. 37 (1986); *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir.), cert. denied 111 S. Ct. 249 (1990).  If the party opposing the motion fails to do so, summary judgment is appropriate.  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254 (7th Cir.), cert. denied, 474 U.S. 829 (1990).  Since the decision in *Celotex Corporation*, the party bearing the burden of proof on an issue must produce evidence sufficient to establish the existence of every element essential to the party's cause.  *Celetox Corporation v. Catrett*, 477 U.S. at 322-23.

To defeat a motion for summary judgment, Mr. DeLauro must establish that sufficient evidence exists for a jury to return a verdict for him.  *Harbor House Condominium Association v. Massachusetts Bay Insurance Company*, 915 F.2d 31 (7th Cir. 1990); *Hines v. British Steel Corporation*, 907 F.2d 726 (7th Cir. 1990).  Mr. DeLauro cannot rest on mere allegations in the pleadings, but must designate disputed facts that are material, or outcome-determinative, under applicable law.  *Hughes v. Joliet Correctional Center*, 931 F.2d 425 (7th Cir. 1991); *Johnson v. Pelker*, 891 F.2d 136 (7th Cir. 1989).  In this case, no material issues of fact exist that would preclude summary judgment for Dr. Crawford or Correctional Medical Services.

## V.   ARGUMENT

### A.   Plaintiff's State Law Negligence Claims:

Plaintiff claims that Dr. Crawford was negligent because he failed to timely diagnose and treat appendicitis and that Correctional Medical Services, Inc. was negligent via respondeat superior for the actions of the nursing staff at the prison.

### 1.   Dr. Crawford and the nursing staff met the applicable standard of care in their treatment of Plaintiff.

As the Plaintiff, Mr. DeLauro has the burden to prove the following: (1) the appropriate standard of medical care applicable to the medical provider; (2) the medical provider's care fell below that standard of care; and (3) the medical provider's failure to meet the standard of care was the proximate cause of the plaintiff's injuries. *Watson v. Medical Emergency Services*, 532 N.E.2d 1191, 1193 (Ind. App. 1989). When a healthcare provider presents an opinion that he did not breach the applicable standard of care, a patient asserting medical malpractice must "present expert testimony establishing the standard of care and the [defendant's] conduct fell below the standard of care." *Marquis v. Battersby*, 443 N.E.2d 1202, 1203 (Ind. App. 1982). The only exception is where the standard of care and failure to meet it are so obvious that a layman can make those determinations (e.g., a surgeon leaving foreign objects in a patient after completing surgery, *Ciesolka v. Selby*, 261 N.E.2d 95, (Ind. App. 1970)). If the patient fails to provide such evidence, then "there is no triable issue" and defendant is entitled to summary judgment as a matter of law. *Id.; Kerr v. Carlos*, 582 N.E.2d 860, 863 (Ind. App. 1991); *See also, Narducci v. Tedrow*, 736 N.E.2d 1288 (Ind. App. 2000). This rule has been approved by the Indiana Supreme Court in *Burke v. Capello*, 520 N.E.2d 439, 441 (Ind. 1988), and *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992).

Plaintiff cannot succeed on a negligence case against Dr. Crawford and CMS unless he has expert medical testimony to show that the care rendered to him was below the applicable standard of care and that the care rendered by Dr. Crawford and CMS caused him harm. Four different independent physicians, Dr. Barbara Zimmerman and the three members of the Medical Review Panel, have opined that Dr. Crawford met the applicable standard of care in his treatment of Mr. DeLauro. Plaintiff must rebut this testimony with expert medical testimony. Plaintiff's own testimony that his condition should have been diagnosed earlier is insufficient to create a

triable issue of fact as to whether Dr. Crawford was negligent.  Mr. DeLauro is not a nurse or a physician and has no medical training.  He cannot dictate what care he receives or should receive; only medical professionals can do that.

Dr. Crawford was an independent contractor physician and so Plaintiff can only show that CMS was negligent if the nursing staff was negligent.  Dr. Crawford has opined that the nursing staff's treatment of Mr. DeLauro was within the standard of care.  Again, Plaintiff must rebut this with expert medical testimony. Because Plaintiff has not shown that Dr. Crawford's actions or the actions of any Correctional Medical Services' employees were below the standard of care, Plaintiff's negligence claims fail as a matter of law.  It stands to reason that if Dr. Crawford and Correctional Medical Services, Inc. were not negligent, then they cannot be found to be deliberately indifferent.

### B.      Plaintiff's Federal Claims of Deliberate Indifference:

### 1.      The Deliberate Indifference Standard:

Plaintiff alleges Defendants violated the Eight Amendment's prohibition on cruel and unusual punishment by acting with deliberate indifference to his serious medical needs.  The Supreme Court has interpreted the Eighth Amendment's proscription against cruel and unusual punishment as imposing a duty upon the States, through the Fourteenth amendment, to provide adequate medical care to incarcerated individuals.  *Boyce v. Moore*, 314 F.3d 884, 888-889 (7th Cir. 2002), citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  A prisoner is not entitled to unqualified access to healthcare.  *Boyce v. Moore*, 314 F.3d at 888-889.  In addition, a prisoner cannot demand specific care and is not entitled to the best possible care.  *Johnson v. Doughty*, 433 F.3d. 1001, 1013 (7th Cir. 2006); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999).

Prison officials violate an inmate's Eighth Amendment rights if they act with "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291 (1976). The Supreme Court observed in *Estelle v. Gamble*, 97 S. Ct. at 292, that:

> In order to state a cognizable claim a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

To establish deliberate indifference, a plaintiff must prove two elements, one objective and one subjective. The plaintiff has the burden of demonstrating that "(1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to his health or safety." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *Farmer v. Brennan*, 114 S. Ct. 1970 (1994).

An objectively serious medical need is one that has been diagnosed by a physician and that requires medical treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Pinkston v. Madry*, 440 F.3d 879 (7th Cir. 2006); *Foelker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005); *Jackson v. Illinois Medi-Car, Inc.* 300 F.3d 760, 765 (7th Cir. 2002); *Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991). Objectively serious medical needs rise to the level of injuries which are life-threatening, or pose a risk of needless pain or lingering disability if not treated immediately. *Pinkston v. Madry,* 440 F.3d. at 892; *Davis v. Jones*, 936 F.2d., at 972.

"Deliberate indifference" means recklessness in a criminal subjective sense, such as disregarding a risk of danger so great that knowledge of the danger can be inferred. *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). To be deliberately indifferent, the defendant must both be aware of facts from which the inference could be drawn that a substantial

12

risk of serious harm exists, and he must also draw the inference.  *Pinkston v. Madry*, 440 F.3d at

879; *Farmer v. Brennan*, 511 U.S. at 837.  Deliberate indifference only occurs if the defendant

knows of and disregards an excessive risk to inmate health or safety.  *Greeno v. Dailey*, 414 F.3d

645, 654 (7th Cir. 2005); *Estate of Cole v. Fromm*, 94 F.3d at 258-259.  Deliberate indifference

must be a conscious disregard of known or obvious dangers.  *Board v. Farnham*, 394 F.3d at

394.

      To be deliberately indifferent, defendants must act with a sufficiently culpable state of

mind.  *Farmer v. Brennan*, 114 S. Ct. at 1981; *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir.

1991), *cert. denied*, 112 S. Ct. 1206 (1992).  A culpable state of mind, or subjective intent, may

be established by showing that the defendant had actual knowledge of impending harm that was

easily preventable, such that conscious refusal to prevent the harm can be inferred from the

defendant's failure to prevent it or showing that a defendant deliberately avoided acquiring

knowledge of impending harm.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Patrick*

*v. Staples*, 780 F. Supp. 1528 (N.D. Ind. 1991).  Deliberate indifference is a synonym for

intentional or reckless conduct; reckless conduct so dangerous that the deliberate nature of the

defendant's action can be inferred.  *Foelker v. Outagamie County*, 394 F.3d, at 513.  The

defendant must know of the serious risk to the prisoner's health, i.e. the serious medical need at

issue, and they must also consciously disregard that risk/need so as to inflict cruel and unusual

punishment upon the prisoner.  *Farmer v. Brennan*, 511 U.S. at 837-838.  To be deliberately

indifferent, the defendant must act with reckless disregard toward the inmate's serious need by

inaction or woefully inadequate action.  *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999).  The

defendant must have known that the prisoner was at serious risk of being harmed and decided not

to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d at 478.  Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.  *Duane v. Lane*, 959 F. 2d 673, 677 (7th Cir. 1992).  This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner."  *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir. 1991).

Medical malpractice, negligence, or even gross negligence do not constitute deliberate indifference, nor does dissatisfaction or disagreement with a doctor's course of treatment. *Johnson v. Doughty*, 433 F.3d. at 1013; *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002); *Dunnigan v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999); *Goka v. Bobbit*, 862 F.2d 646, 650 (7th Cir. 1988).  Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference.  *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

It has been well established that deliberate indifference claims brought pursuant to 42 U.S.C. Section 1983 against a corporation like Correctional Medical Services cannot be based on the theory of respondeat superior.  *Chaves v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993); *See also Iskander v. Vill. of Forest park,* 690 F.2d 126, 128 (7th Cir. 1982), holding that "a private corporation is not vicariously liable under Section 1983 for its employees' deprivations of others' civil rights." Because Correctional Medical Services acts under color of law by contracting to perform a government function, i.e. providing medical care to prisons, Correctional Medical Services is treated as a government entity for purposes of Section 1983 claims.  *See Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 766 (7th Cir. 2002).*

**2.**      **There is no evidence that Correctional Medical Services had a policy or procedure that amounted to deliberate indifference.**

To state a cognizable deliberate indifference claim against Correctional Medical Services, Plaintiff must establish that he suffered a constitutional deprivation as the result of an express policy or custom of Correctional Medical Services. *Jackson v. Illinois Medi-Car, Inc*., 300 F.3d 760, 766 (7th Cir. 2002). Plaintiff must show that Correctional Medical Services has: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a practice that is so wide-spread that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Estate of Moreland v. Dieter,* 395 F.3d 747, 758-759 (7th Cir. 2004). For example, deliberate indifference can be demonstrated by showing that a governmental entity (or corporation acting as a governmental entity) had "such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Circuit 1983). Detainees are entitled to "the minimal civilized measure of life's necessities." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). However, jail conditions may be "harsh and uncomfortable without violating the Constitution." *Id*. In addition to showing that his medical care was affected by a policy, custom, or procedure of Correctional Medical Services, Mr. DeLauro must also offer evidence of other inmates who were subjected to the same allegedly indifferent conduct as he complains about, because a custom cannot be established through a single incident. *Palmer v. Marion Count*y, 327 F.3d 588 (7th Cir. 2003).

15

Plaintiff has not specifically identified what Correctional Medical Services' policy or practice he claims is at issue.  Presumably, Plaintiff claims that CMS has a practice of delaying medical care.  However, the undisputed facts show that the medical care rendered to Plaintiff by the nursing staff and Dr. Crawford was within the standard of care.  The nursing staff monitored Mr. DeLauro constantly for several days and each time Dr. Crawford saw Mr. DeLauro, he sent him to the hospital.  Correctional Medical Services' policies did not deprive Mr. DeLauro of his Constitutional rights because Mr. DeLauro received not only adequate medical care, but medical care that was within the standard of care.  Furthermore, the sheer volume of medical care given to Mr. DeLauro negates his deliberate indifference claim.  Therefore, Correctional Medical Services is entitled to judgment as a matter of law on Plaintiff's Constitutional claim.

### 3.  Dr. Crawford did not act with "Deliberate Indifference" to Mr. DeLauro's medical needs.

Deliberate indifference to a serious medical need is an extremely high standard.  The facts of this case are such that no jury could find that Dr. Crawford was deliberately indifferent to Mr. DeLauro's medical needs.  Dr. Crawford only saw Mr. DeLauro on two occasions.  The first was on April 13, 2006, when Dr. Crawford immediately wanted to rule out appendicitis and sent Mr. DeLauro to the hospital for a CT scan of the abdomen.  The CT scan was negative for appendicitis and Mr. DeLauro returned to the prison.  Dr. Crawford was next asked to see Mr. DeLauro five days later, on April 18, 2006, when he again sent Mr. DeLauro to the hospital to rule out appendicitis.  Dr. Crawford was asked to examine Mr. DeLauro on two occasions and on both occasions he included appendicitis in his working diagnosis.  When Dr. Crawford first saw Mr. DeLauro on April 13, 2006, two days after Mr. DeLauro's first report of abdominal problems, Dr. Crawford immediately ordered an abdominal x-ray, then sent Mr. DeLauro to St.

16

Anthony Hospital for an abdominal CT scan. That CT scan was negative for appendicitis. Dr. Crawford reasonably relied on that study and had no reason to question the radiologist's reading. Mr. DeLauro's condition persisted and he was under the care of the nursing staff and the nurse practitioner. Dr. Crawford was available and on call if the nursing staff needed him to examine Mr. DeLauro or needed his input.

Dr. Crawford was next asked to see Mr. DeLauro on April 18, 2006, five days after the negative CT scan, when Mr. DeLauro's symptoms persisted. Dr. Crawford again immediately considered appendicitis and again sent Mr. DeLauro to the hospital. Mr. DeLauro was diagnosed with a ruptured appendix at Wishard Hospital, where he underwent surgery. Plaintiff claims that Dr. Crawford should have diagnosed his condition earlier and that if he had, surgery would not have been necessary. However, Dr. Crawford considered appendicitis immediately when he saw Mr. DeLauro on April 13, 2006, but a CT scan of the abdomen done at St. Anthony Hospital showed a normal appendix. Dr. Crawford had no reason to second-guess that reading. The prison medical staff, including nurses and a nurse practitioner, monitored Mr. DeLauro around the clock over the next five days and could have called Dr. Crawford if they needed him to examine Mr. DeLauro. When Dr. Crawford saw Mr. DeLauro the second time on April 18, 2006, he again immediately considered appendicitis and sent Mr. DeLauro to the hospital. The facts show, and Dr. Barbara Zimmerman's Affidavit and the Medical Review Panel Opinion confirms, that Dr. Crawford's assessment of Mr. DeLauro was entirely appropriate on the two occasions that he saw Mr. DeLauro.

Plaintiff also alleges that Dr. Crawford's post-operative care of Mr. DeLauro was inappropriate, but Plaintiff does not specify why. As Dr. Crawford explains in his Affidavit and as the medical records show, Mr. DeLauro was admitted to the prison infirmary for 20 days

following surgery and was monitored around the clock by medical staff.  While Mr. DeLauro was admitted to the prison infirmary, he was monitored closely by the nursing staff and Dr. Crawford; specifically, medical staff checked on Mr. DeLauro and his abdominal wound anywhere from two to four times a day.  Mr. DeLauro also received pain medication and antibiotics while in the prison infirmary.  Mr. DeLauro's surgical wound became infected, but resolved with antibiotics.  In short, there is simply no way any reasonable jury could conclude that Dr. Crawford was deliberately indifferent to Mr. DeLauro's medical needs.

## VI.    CONCLUSION

Dr. Crawford and Correctional Medical Services are entitled to summary judgment because Dr. Crawford and the nursing staff's treatment of Mr. DeLauro was within the standard of care and there is no policy of CMS that affected Mr. DeLauro's medical care.

WHEREFORE, Dr. Crawford and Correctional Medical Services request that the Court GRANT summary judgment in their favor and for all other appropriate relief.

Respectfully submitted,

s/Carol A. Dillon
Carol A. Dillon (#25549-49)

Carol A. Dillon (#25549-49)
Bleeke Dillon Crandall, P.C.
8470 Allison Pointe Boulevard, Suite 420
Indianapolis, Indiana 46250-4365
317.567.2222
Fax:  317.567.2220
carol@bleekedilloncrandall.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2012 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Cory Voight
Indiana Attorney General's Office
cory.voight@atg.in.gov

William H. Tobin
tobinlawyer@comcast.net

s/Carol A. Dillon
Carol A. Dillon
